In re: Proposed Bridge, North Street, Wilkes-barre.

*County bridges—Replacement—Approval of court—Discretion of court—Act of February 14, 1907, P. L. 3.*

In a proceeding for the replacement of a county bridge under the Act of February 14, 1907, P. L. 3, the court is not restricted to determining merely whether the old bridge is sufficient to meet the public needs, but it has the power to say that it is more economical to repair the bridge than to replace it.

In such proceeding the court may properly consider the expense of the plan proposed by the county commissioners.

Argued March 1, 1926. Appeal No. 25, February T., 1926, by County Commissioners, from order of Q. S. Luzerne County, June Sessions, 1925, No. 676, in the case of In re: Proposed County Bridge at North Street, Wilkes-Barre City, over the Susquehanna River. Before PORTER, P. J., HENDERSON, TREXLER,

Keller, Linn, Gawthrop and Cunningham, JJ.   Affirmed.

Petition of County Commissioners for approval of replacement of bridge over the Susquehanna River at Wilkes-Barre.   Before Fuller, P. J., Garman, Woodward, McLean and Jones, JJ.

The facts are stated in the opinion of the Superior Court.

The court refused approval of replacement and recommended repair of the old bridge.   Commissioners appealed.

*Error assigned* was the order of the court.

*Francis Shunk Brown,* and with him *John H. Dando, A. Carson Simpson, W. A. Valentine,* and *B. W. Davis,* for appellants.

No appearance for appellee.   The judges of the lower court filed a printed statement of their position for the consideration of the Superior Court.

Opinion by Linn, J., April 19, 1926:

The county commissioners of Luzerne County appeal from the refusal of the court of quarter sessions to approve the replacement of a county bridge pursuant to the act of February 14, 1907, P. L. 3, as proposed by appellants.   The court was of opinion that the bridge should be repaired, and therefore declined to approve replacement.   The act is entitled "An act enlarging the powers of county commissioners to erect county bridges; empowering them to erect and construct new bridges whenever the existing bridge or bridges are not sufficient, for any cause, to accommodate the public travel."   It provides: "That whenever it shall appear to the commissioners of any county that any county

bridge, heretofore, or hereafter to be erected or constructed, is not sufficient for any cause to accommodate the public travel, it shall be lawful for the said commissioners to erect and construct a new and sufficient bridge to take the place of the then existing bridge: Provided, however, that said commissioners first have the approval of the court of quarter sessions and of the grand jury of the proper county. The said new bridge when constructed shall be a county bridge.''

The proceeding was begun by the petition of the commissioners averring that North Street Bridge, extending over the Susquehanna River and connecting Wilkes-Barre with Kingston, was not sufficient to accommodate public travel, and that the commissioners had resolved to take proper proceedings to replace it with a new bridge and had directed the filing of a petition setting forth these facts with a copy of the resolutions, plans and surveys for presentation to the court and to the grand jury. On August 17th a hearing was had and testimony was taken before the court in banc (five judges) and the court ordered that ''. . . . . . upon hearing of this petition, it is directed without approving or disapproving at this time, that the same be laid before the next grand jury, for action, precedent to any further action of approval or disapproval by the court.'' From that order one of the judges dissented upon grounds not now material.

On August 28th, the grand jury convened and was instructed on the subject by the learned president judge of the court below. As the difference of opinion between appellants and the court below now presented for our review is precisely stated in that charge, we now quote it: ''Your function, and, after you shall have acted, our function is simply to determine whether the present bridge should be replaced by another bridge, or put in repair, which would be the only other alternative.'' On August 29th the grand jury reported its

approval of the replacement of the bridge as desired by the commissioners. On September 1st, the court, in banc, made the order now appealed from, withholding "our approval of such replacement at this time, being of the opinion that in order to relieve present traffic congestion with the greatest possible dispatch, repair of the present structure should precede replacement, accompanied by proceedings to construct a third bridge."

Evidence taken at the hearing on August 17th shows that the bridge was built of steel trusses on masonry piers and with wooden floors; recently it was closed to traffic, as unsafe; it can be repaired and travel restored over it at an estimated expense of $80,000; repair will of course take much less time than replacement. The bridge that the commissioners propose to build, is estimated to cost $1,507,374, if built of concrete, and about $150,000 less if built of steel. During replacement, other temporary bridge accommodation will be required and there is evidence that it can be supplied at an estimated cost of $175,000.

Doubtless with those facts in mind, and desiring in the public interest the earliest possible restoration of interrupted bridge travel, as well as at the same time directing attention to the imminent requirement in any event of an additional bridge for the accommodation of increasing travel, disclosed in the evidence, the court expressed its conclusion that the bridge should be repaired with the suggestion that consideration be given to the original location of a third bridge (there are now only two over the river). That conclusion is assailed by appellant commissioners as beyond the power of the court; they say that as they have concluded that this bridge is not sufficient to accommodate travel and as they have produced evidence to support that conclusion, the necessity for a change of bridges within the meaning of the statute appears, and

that the court must approve,—that there can be nothing about which it may exercise choice. The argument is that to approve means to ratify or confirm and in the words of appellants' brief, that "the utmost exercise of judgment which the word authorizes, is that of determining whether or not the old structure is sufficient to, meet the public needs; if it is, the court may refuse to approve the project of the county commissioners to build a new bridge, if not, the court must approve the project. Once the court has decided upon the question of the sufficiency of the old bridge, its duty to use judgment is done, and the approval or disapproval is a mere formality."

In the light of the decisions of the Supreme Court on the subject, we may not adopt a view so restricted. As has been stated, there is evidence to support the court below in concluding that there is urgent necessity to restore this bridge to public use; that it may be put into service relatively soon by repair and that it is reasonable to repair it; that the present interference with travel will therefore be less and for a shorter time if the bridge is repaired than if it is replaced (requiring at least two years) and that it is wiser economy to spend $80,000 in the repair of this bridge than to spend $175,000 in furnishing temporary bridge facilities for use during replacement.

The commissioners have the duty of providing adequate county bridge facilities; the act of March 30, 1905, P. L. 81, authorizes them to repair such bridges; the act of May 24, 1917, as amended June 7, 1919, P. L. 414, authorizes the construction of new county bridges on original locations. The act now before us for interpretation, however, gives commissioners power to replace existing bridges "when it shall appear......that any county bridge......is not sufficient for any cause to accommodate the public travel......," but in such case they must "first have the approval of

the court......'' The fact that approval of the court
is required would indicate that the legislature recog-
nized the possibility of contingencies requiring choice
between replacement and other possible remedies for
the insufficiency. To give approval, or sanction, to a
proposed course that is one of two or more that may
be chosen, necessarily involves the exercise of judg-
ment, and, if, as here, it appears that such exercise of
judgment was based on evidence supporting the con-
clusion, we may not set it aside. The court has the
power to say it is more economical to repair than to
replace.

There is a suggestion in appellants' argument that
the court should not have considered the expense of
what the commissioners proposed. That was a proper
subject for the consideration of the court. While it
is the duty of the commissioners to build the bridge,
the court and the grand jury have an equal vote with
the commissioners, on the preliminary question of
whether the bridge should be replaced. In Common-
wealth v. Commissioners of Monroe County, 2 W. & S.
495, it was said: ''A review of our legislation from the
year 1700 to the year 1836 as presented in the opinion
of the court below, shows clearly that the powers of the
county commissioners, in respect to bridges, were in-
tended in all cases to be checked and guarded by the
concurrent approbation and authority of the court
and grand jury of the county. Involving, as these
structures do, the outlay of large sums of money, to be
collected by taxation on the people, it was intended
that the expenditure should not be hastily incurred or
by the will of a single body, but should be carefully
watched and deliberately approved of by the sanction
of two other bodies, whose judgment should be exer-
cised in respect to it.'' Later, in considering section
35 of the Act of 1836 in re Pequea Creek Bridge, 68
Pa. 427, the Supreme Court said: ''It is evident that

the legislature intended that these three bodies should act as checks upon each other in the unnecessary expenditure of a public money in the erection of county bridges. When either of them therefore have put their disapprobation on record, the proceeding falls.'' Section 35 of the act of 1836 was amended June 12, 1907, P. L. 523, in two particulars; (1) to provide for bridges over streams in cities or boroughs (in addition to townships), and (2) it was provided that ''should any county bridge whether heretofore or hereafter erected, be insufficient, for any cause, to accommodate the public travel, it shall be lawful to proceed in said court by petition, in the manner aforesaid, with like proceedings and with the same effect as if the petition was for an original county bridge; and, upon the approval of the court, grand jury, and county commissioners, a new bridge may be erected and constructed to take the place of the bridge then existing.'' See Carrere v. Schmidt, 278 Pa. 457. It will be observed that the court, grand jury and the commissioners have by that statute the long exercised concurrent power to determine whether a bridge should be replaced if the proceeding is initiated by the proper authorities of any city, borough or township. Now the act under which appellants are proceeding was passed at the same session of the legislature (1907 P. L. 3), and, though the commissioners are thereby authorized to initiate the proceeding (instead of having it initiated by the local authorities as in the other act passed in 1907) they may only construct the bridge if they ''first have the approval of the court of quarter sessions and of the grand jury. ... ... .'' We do not understand that by that statute the legislature intended that the court or the grand jury should have less power than under the act of June 12, 1907; on the contrary, we all agree that it was intended to continue in the court the same power

that had been exercised for over two hundred years with regard to county bridges.

Order affirmed.